3-12-0275. People of the State of Illinois and believe in Justin Nicolosi v. Gordon K. Moore III. Appellant by Robert Parker. You may proceed. Good afternoon. May it please the Court? Appellant, Mr. Nicolosi. I'm Rob Parker. I'm from Peoria. This is an appeal from Peoria on a first-degree murder conviction. Specifically, however, the conviction of Mr. Gordon Chip Moore II is not exactly why we are here. We're actually here on the pretrial ruling that occurred. A motion to eliminate was filed by the State, seeking to restrict expert testimony, saying that it was within the common knowledge of the jury as to the defendant's state of mind. That was in response to discovery that we had traded with the State, and we had indicated that we did intend to get into state of mind at that time as part of our testimony. But in response and honing out this motion to eliminate, we made clear that that was an aspect of the testimony we sought to present through two different experts. And the judge issued his ruling stating that no legally recognized provocation can be introduced by the defense, provocation being one of the two elements, sudden passion, of course, being the other one, with respect to second-degree murder, which would be the instruction that we would be seeking upon a trial. And as he said in that order of January 11, 2012, therefore, unless the defense can prove both elements, as required by statute, the testimony of the doctors is not relevant. And we believe the focus must be on the fact we are speculating on what the testimony will be. The stage in the proceedings is still at pretrial. So we had no actual evidence. There was not actually even a proffer with the expert on the stand. This was all done through reviewing the attached five-page report of one Dr. Chapman, specifically retained for the case, and also a two-page report by Dr. Ladd, who had in fact been treating the defendant for approximately two months preceding the trial, or preceding the crime. So when we look at the court's ruling restricting expert testimony, we see that the evidence that he expected and was weighing on whether provocation would be shown is inferred only from a single report. He only references Dr. Chapman's report. And he's also only in his ruling, he's looking at the Garcia opinion and saying that I don't think we're going to be able to prove provocation. So it's not relevant. But that's not even what the people argued. They argued this is an issue of common knowledge. So he strayed from the arguments of the parties, while also anticipating what might be shown at trial by the defense. And in doing so, he determined what category of provocation would ostensibly apply, those being four. And he determined that mutual quarrel or combat would be the relevant category. But in fact, the defense had not sought to establish or state what the evidence might show. We merely wanted to call these doctors in furtherance of proving some action, a particular aspect of the case. So as a result, the testimony of the experts was excluded entirely. And impliedly, our ability to get into second degree charge and that evidence along with it. So in response and in our brief, we have heavily emphasized the Brumfield opinion. And Brumfield states that there is no obligation on the part of a defendant to prove sufficient evidence to establish a defense prior to trial. And in fact, the court is without authority to question the propriety of a defense before we get to the trial. And in that case, the crime was rape and the defense was alleging intoxication. And it sought to introduce two experts. Anyway, toxicology being a foremost concern of that. The court heard an offer of proof and on that basis prevented testimony by the experts. And the reviewing court stated that the court was working off of a faulty assumption. The efficacy of the defense should be governed and judged at trial, not by the pretrial evidence. And there were serious constitutional concerns raised by that. It implicated the defense's right to present their defense. So it's a due process concern, a constitutional issue that we have raised on appeal. An analogy that was also made in another case, Gill, that I cite, and that one, is that in essence we're conducting a summary judgment hearing and ruling, which is only a civil standard. And in fact, I think if the court reviews the order filed by the trial court in this case, there is summary judgment in civil language, in the light most favorable to defendant reviewing this evidence. And it's borrowing that standard and those notions when we really must be giving the defense the full right to present any aspect of his case toward a defense. Gill also states, quote, under Illinois law, the proceeding in which the parties in a criminal case are required to present the evidence they may possess in support of their respective positions is called the trial. So our position, then, experts can be offered and called for any aspect of proof at trial. And upon a review of the transcript of the motion in limine hearing, it's seen that we have to address this. And we're stating that we believe we can call the experts in furtherance of an aspect, such as sudden passion. But to say that the evidence we have, as contained in one expert report, contains no evidence of provocation is therefore also requiring our experts to speak to both elements in order to even be able to qualify to testify. But as we showed in our brief, there's case law that says, for example, quote, an expert or expert testimony is to help the jury understand an aspect of the evidence. And that's in the Coleman case that we cite. And if we just look at the evidence rule, 401, evidence may be offered to make a fact more or less probable. So we don't have to make our entire defense probable or even beyond viability at the pre-stage proceeding in which we are offering this expert testimony. We are offering it for an aspect of the case. So we believe that these experts can and should be able to testify to numerous aspects that we would be seeking to introduce. And we've outlined that in our brief, but I believe that includes prior treatment and counseling, in particular because we have a treating physician for two months prior to the crime whose testimony was completely excluded. And prior diagnoses, we have adjustment disorder with rage and depression, generalized anxiety disorder, and major depressive disorder, along with a substance abuse diagnosis. Those substances at the time of the crime being Vicodin, Ambien, Ativan, and alcohol interacting collectively. And then we have a curious issue here where he is alleging blackouts. He does not remember much of the actual incident at the time the crime was committed. So what are the triggers for a blackout? Is it a real medical condition? Can there be a cognitive disconnect? Can there be a loss of control associated with a blackout? What's the medical idea behind this? So those are the issues that we would be seeking to look into. We acknowledge that an expert retained after the crime, reviewing someone in our case six months or so, five months, six months later, is not going to be able to speak on state of mind. They cannot go so far as to say, yes, he was under a sudden passion. We understand that, but the case law cited extensively throughout the brief does appear to show that they could say a wide range of other things. As I just explained, I believe all of those areas would be admissible topics for an expert at trial. Do you agree with Tom Phill, then, that you have to assert a legally viable defense? I noticed the viability language, and I actually looked at Black's Law to see if viability was determined, and instead we get to a lot of fetus definitions. I think that we need to be able to assert, in response to the prosecution, something that could be produced at trial. So if we have some sort of glimmer of ability, such as the defendant's own testimony, as to what might constitute, in this case, provocation, then I believe we have a right to present that evidence at trial without being cut off prior to trial. In terms of other evidence, we might also be calling to support the other aspects of that defense. In other words, viability would be determined also at a pretrial stage in terms of feasibility. I don't think we can gauge, just from Dr. Chapman's five-page report, whether, in the constellation of the evidence of this case, we are or are not going to have elements of provocation. Maybe, in that case, we have to expand the motion, eliminate hearing, and call the expert to the stand, which didn't even occur here. But to say that, in this five-page report, there's no provocation, therefore none of this applies, and your defense isn't relevant, that's foregoing the possibility of viability. So I think that, to entertain the idea of a viable defense, means that we can articulate that it could be shown. And if we look at how we get to that jury instruction at the end, it would certainly be up to us to go through the trial and actually create that testimony and facts that suggest provocation. If we don't, well, then we don't get the second-degree manslaughter instruction to the jury. And that would be our risk at trial as well, because then we're faced with only first-degree murder and very few other evidence. But all we really need to show is very slight evidence upon our theory of the case to even get that jury instruction tendered to the jury. And our burden of proof would simply be a preponderance of the evidence as far as that defense as a whole. So even at trial, let alone the viability stage in pretrial proceedings, we don't have to show that much just to get it into consideration. The rest goes to the weight. So we believe that because of the way our experts were struck and the array of testimony they could have provided, even though it's going toward admissibility of evidence and therefore the discretion of the trial court, it was an abuse of discretion in this case because it does not weigh what was even before the court at the time properly. They didn't even follow the arguments of the parties. The court did not. Instead, we get the Garcia opinion as providing a foundation for striking expert testimony entirely. But if we look at Garcia, as cited by the trial court in support of his order, that case permitted psychiatric testing regarding alcoholism, depression, borderline personality disorder, and that the defendant was prone to impulse and violence. And we cite other cases as well. I know that the Strader opinion received some criticism and rains, and we addressed that in our brief. But Strader even says, we are not prepared to say that the field of psychology is open to all, and when the experts were prevented from testifying about depression in part and other aspects, that was error. Now, again, I mentioned rains. It appeared that Strader mischaracterized the burden for second degree, and that's contained within Rain's opinion. But as to Strader's analysis of the effect of striking an expert, it does appear to remain viable in that regard. And rains also prohibited state of mind, which we're compelled to acknowledge, but that too allowed tests, conclusions by experts, personality type explanations, and how the defendant would think under those circumstances. Even in Pertz, which is a case cited by the people in their reply brief, a doctor there testified to the tests he conducted, results, opinions on the defendant's personality, typical traits of the disorders identified, especially including a modified personality disorder with epilepsy, because there were whiteouts in that case, and dosages of medication. There we had to regard the afflictions, and here we're doing much the same. What was the defendant in terms of his position in life on that day? What was going through his mind? What were his diagnoses? He can't speak to these himself. As we note in our brief as well, that would be hearsay for him to attempt to walk into court and say, well, I have a depressive disorder with range and anxiety. Well, who says you do? So we would actually, in fact, need the doctors to establish that aspect of the case. We also cite elsewhere in our brief evidence on toxicology, pharmacology. It's clear that that requires expert testimony as well. But as a matter of procedure, where we come to, at least in my analysis of this issue, it all comes down to Brumfield and Gill to a lesser degree, but Brumfield being the prominent issue here of criminal procedure. How far can we go before we're going to say, you can't present this evidence? Well, we submit that it's not where it occurred. This did not warrant a total exclusion of our experts, and it severely hamstrung our ability to proceed to trial and present a defense. Because of these due process concerns, we are here today asking this court to reverse the first-degree murder conviction in light of our preservation of that pretrial issue and remand because of the abuse of discretion for a new trial. Thank you. Mr. Nicolosi. Good afternoon, Your Honors. May it please the Court. Mr. Parker. The people at the top take a couple issues with the defendant's case, mainly with things discussed at length in the reply brief. Number one is the defendant claims that, she's right, that the people's arguments in our brief were not based on the reasons why the trial judge granted our motion in limine. He is correct that the trial judge granted the people's motion in limine mainly based on Garcia and because there was no evidence of provocation. But the people would submit that, even though we argued other things in our brief, that the appellate court can affirm this granting of the motion on any basis supported in the record. That's why the people made the arguments that they did. I'll get into the specific arguments a little later. I just wanted to get that right off the top. One other thing is in the reply brief, the defendant focuses on the fact that, in the Brumfield argument, that essentially the defendant is precluded from offering a defense in this case because of the granting of the motion in limine. The people submit that that's not true, that all the defendant was precluded from doing here was, he was precluded from offering experts that were and taking that transition, I will take that into the people's discussion of people versus Hewlett, which we discussed at length in our brief. In that case, the expert that was proffered was going to testify as to the defendant's mental state and physical condition. This is a defendant who was charged with killing her daughter. She was suffering from postpartum depression. She was on medication. She had a lot of personal problems, financial problems, living with a lot of people. No one was making any money. They were going to be evicted. The psychologist was going to testify that because of these things, all these stresses in life, that the defendant lacked the ability to cope with her parental duties and was unable to appreciate, based on her depression and other stresses, she was unable to appreciate the danger that her conduct towards her deceased daughter presented. The trial court and the appellate court had multiple findings on this case. Number one, they held that the jury was capable of using their common knowledge of observation that the defendant was depressed and overwhelmed by the circumstances and the jury was more than capable of deciding if this killing was intentional or reckless. The trial court and the appellate court also decided that this argument sounded an awful lot like diminished capacity, in that the defendant was basically proffering this expert to establish that she was incapable of forming the requisite intent for the charge of first-degree murder, and therefore she was guilty of lesser-included offense of second-degree murder, voluntary manslaughter. The court thought diminished capacity is really what sounds like what they were going for here. And the third thing, the appellate court said that the doctor could not testify to the state of mind of the defendant because the doctor wasn't at the scene. The doctor only had so much information, wasn't at the scene, how could the doctor possibly testify to this? People submit that the cases and circumstances here are very similar to those in Hewlett. In this case, the doctor's Chapman and Ladd were not needed to testify as to how the defendant was feeling. Any jury, any trier of fact could have realized that this defendant was in a bad state of mind. He was angry because of the demise of his marriage. He had depressive symptoms. He had taken substances. While the jury may not know everything in the realm of psychology, they certainly are able to determine that this man was going through a lot of things. That's why he committed this crime. The people would also point to the report of Dr. Chapman and Ladd, but mainly Chapman for this quote. People submit that this quote kind of summarizes what Dr. Chapman and Ladd were going to testify to. And right near the end of Dr. Chapman's report, he quotes the defendant. He was primed by the trauma of three past losses of his wife and the relationship. All those emotions transferred to the current pending loss and the impairment of self-restraint as a result of the alcohol invited in, combined with the reaction of rage resulted in the present offense. People submit that, number one, the jury, like I said earlier, can decide those things. And number two, that sounds an awful lot like diminished capacity. It sounds like what? Missile capacity? Oh, diminished capacity. Sorry, Your Honor. I'm not the most eloquent speaker. Take your time when you say diminished capacity. Right from here on out. People also submit that, well again, like I mentioned earlier, just as in Hewlett, Drs. Chapman and Ladd were not present. They could only testify that the defendant told him that he blacked out and that he suffered hysterical blindness. You're saying diminished capacity, that the jury could figure that with this combination, he would have diminished capacity? No, Your Honor. That was two separate arguments. I'm sure I'm positive I wasn't clear on that. The jury can figure out that this gentleman was angry and that he consumed these substances and the 12 Vicodin tablets and the beers and that he has depressive symptoms. The jury can figure that out on their own. That was a separate issue. And then diminished capacity. Well, I mean, he can testify to that. Absolutely. Okay. But the effect of that, you're saying the jury can figure that out? Well, Your Honor, maybe not. Maybe they couldn't figure that out. But the people would submit that there is nothing in the reports of Drs. Chapman or Ladd that explain or even allude to how the combination of his depressive symptoms and the way he was feeling would interact with the 12 Vicodin tablets. There's no even evidence. I was going to say proof, but there's not even any evidence that these doctors can testify to that. Drs. Chapman and Ladd both created reports solely for the purposes of this case, for this testimony. And the people submit that they would have mentioned in these reports that the adjustment disorder that the defendant suffered from combined with the substances would have had any impact on his behavior. But the reports are notably silent on both accounts, Your Honor. Well, is it merely the report that's going to be introduced as evidence, or is there going to be testimony from the stand? Well, there might be testimony from the stand, Your Honor, but the fact is that the people would submit that it would be reasonable to conclude that what the basis of their testimony is going to be contained in the record. And the fact is that any effect of the combination of his feelings plus these substances is not mentioned in the report. They're talking about, as I quoted Dr. Chapman earlier, he's talking about that basically combined they result in the offense, but he doesn't exactly explain even a little bit how those any science behind it, or arguing that scientists are needed to explain this stuff. But the fact is the trial judge was presented with, and they didn't have the information that the trial judge thought they needed to rule the way he did. And the people submit that he didn't abuse his discretion. It sounds like criminal trials are becoming like civil trials, doesn't it? I don't have much experience with civil trials, Your Honor, but I will absolutely take your word for it. But anyway, moving on. To sum up my argument on Hewlett, I guess I'll just say that Hewlett stands for the proposition that a trial judge does not abuse his discretion preventing expert testimony on matters within the common knowledge of the jury, regardless of a diagnosed mental condition like the defendant in Hewlett suffered from. Moving on, the people also submit that if any error was committed here in denying these experts from testifying that any error was harmless, the people point to Strader, as I discussed extensively in the brief. Strader held that it was an error to prohibit the testimony. A similar topic, but the fact is that the error was harmless because the doctor's testimony in that case, the proper testimony, could not establish provocation. As Mr. Parker discussed, there's four reasonable forms of provocation, and that was the main reason why the trial judge in this case granted the people's motion to eliminate. The fact is that the defendant here, there's no inkling in the record that the defendant could offer one of these forms of reasonable provocation. Clearly, it's not substantial physical injury or assault, adultery of the offender's spouse, or illegal arrest. The trial judge in this case surmised that it was a mutual quarrel or combat. And the people would point, not just speculating here that the defendant couldn't establish one of these forms of provocation, but the fact is that at the motion in limine hearing, counsel alluded to the types of provocation evidence that the defendant would offer. He compared it to the case of Robles and the case of Newberry, as I cite in my brief. And he says that this compares to Robles because in that case, there was an argument over children and threats to take them away. And that was provocation. And in Newberry, the combination that that court held that the combination of verbal abuse and a depressed state of mind established reasonable provocation. First of all, the Newberry is an aberration case. It doesn't have any basis in any law because verbal abuse and depressed state doesn't satisfy any of the four reasonable types of provocations that have long been established. So people would submit that that case is irrelevant. And as for Robles, in that case, it wasn't just arguments over children and threats to take them away. There was also a physical act against the defendant's daughter that weighed into the provocation argument. Well, with that, I guess that's about all I have. People submit that no error was occurred in the granting of the people's motion in limine, and that if any more error did occur, that the error was harmless. If there are any questions, I'd be happy to entertain them. Thank you. Mr. Parker? I heard a lot of discussion about Hewlett. I'd like to state that Hewlett does stand for that proposition. We're not disagreeing with its stance on common knowledge. That was not the basis of the trial court's ruling. Garcia was. So we can't cite Hewlett and argue anything with regard to that and say that it supports the trial court's ruling here. But if we're talking about Hewlett, we're saying, for example, there was nothing in the reports. Maybe not the common knowledge of the jury. We got that admission from counsel. So now we're starting to venture away by his own argument here to the fact that maybe what our experts were going to offer at trial wasn't entirely within their common knowledge. So I thought that was interesting. But to say nothing's in the reports and that's all we're arguing off of, well, then we're back to Brumfield. We're not considering actual trial evidence. And to be perfectly candid, when we received these reports, we found them pithy. And we intended to explore them extensively with the experts on the stand. They were not entirely grounded or circumspect compared to what our expectations were. And we didn't intend to get into this extensively at trial with a lot of evidence being heard on this. So it's frustrating here that we're simply citing from reports, both then and now, because we, too, understand that there's not a lot to go off of there. And we just wanted the opportunity to develop that. But there would, in fact, be testimony from the stand. To answer Mr. Nicolosi's question on whether or not the experts might testify, there certainly would be testimony on all of these areas, if it were allowed. However, Hewlett does leave open one interesting door at or near the time of the crime. And to flesh that out a little bit, it states that experts may not testify to matters as such a state of mind. And the exception it carves out is at or near the time of the crime. If the expert saw them then, maybe they can. We've never dealt with that. It's unclear whether we're dealing with that now. As I admitted in my reply brief, I don't think this Court actually has to reach that issue in this instance. But it's an interesting point of note that Dr. Ladd did see the defendant on January 25th and had an appointment scheduled the day of the crime, which wasn't kept. But he was seeing him throughout that period leading up to the crime. He was under the doctor's care. And the question then is, is this near the time of the crime sufficient for that doctor to explore state of mind? Now perhaps on remand, if we haven't addressed that issue, we will do so at the trial court level at that time. And we'll see what results come. But if this Court is willing to address that, it would be our argument that Dr. Ladd's recency in terms of six days is sufficient for near the time of the crime for him to get into that testimony. And it's a unique opportunity that is not available in many cases to have a treating expert testify to the course of his treatment and what the defendant was doing and believing and thinking at that time. But I think Hewlett changing gears for a moment, is stretched to say that it means we can't call experts to talk about depression. Because I think I'm hearing that as an argument. So if that's true, if we're literally going to say Hewlett stands for depression is common sense, as the trial judge remarked in that case, well how do we get around Eckert's ruling as cited in our brief where both the plaintiff, or the people and the defendant in that criminal case, allowed expert testimony on major depressive disorder, and that was met with approval, and instead we just say it's up to the Court or the jury to weigh the credibility of that evidence. How then do we get around basically every other case? Strader, Raines, Burt's, Elder. All of these we have expert testimony to some degree, and in many cases personality disorder and borderline personality disorder. Many issues, mental issues that ring similar if not identical to what we have here. So it would seem that that case would be stretched beyond its original meaning, and it appears to me that Hewlett was criticized primarily because the postpartum depression analysis went directly to state of mind, negating that from first degree to third, to reckless. That was the entirety of the thrust of the expert testimony in that case, was negating state of mind. That's all it was about. So they're trying to say we are incapable of forming the requisite intent. It negates the state of mind. Diminished capacity of forbidden defense. That's where the criticism came from. And I think if we take that situation and try to apply it to sudden passion and all these other flavors of criminal psychiatric testimony on disorders, it's not going to stretch to apply to those instances. It was a particular situation focusing exclusively on state of mind, and if we start restricting other cases and other aspects of proof, for example on sudden passion and depression in that sense, then we're going to be making it go too far. Just briefly with respect to the harmless error argument, the people V. Gonzalez case that I cite in my reply brief on page seven does address this. Strader, as noted by him, was a harmless error standard, but there were 38 witnesses and 14 days of trial. We had a stipulated bench trial. The prosecution read from police reports for half an hour. We presented no evidence. And people V. Gonzalez roundly addresses what happens in these instances. Yes, his guilt, Chip Moore's, was a foregone conclusion at that hearing because we were compelled to preserve that pretrial issue for this court. Finally, as to the provocation and how we got here, the allusion to provocation, it's just that when we're talking about a pretrial situation, we're alluding to what the evidence might be, and we argue that we should not have been in a position to do that. It put us in a very difficult position at that hearing, which I remember poignantly, to be pressed on what evidence of provocation might present at trial because then I'm stuck trying to anticipate the defendant's own testimony and the facts and what he might recollect and how he might be pressed on these issues at a time, by the way, when he was also having lapses in memory. So it was very difficult to speak on what he might be in a position to say or what the 14-year-old witness, his daughter, might be in a position to say or what facts would develop with respect to these allegations swirling around adultery, which is another aspect of those elements that go toward what we allow as reasonable instigation. So to say in a pretrial hearing that we don't have that is too early, which brings me back to what I present the court with. Brumfield and the fact that we should not have been confronted with the striking of two of our experts, it was an abuse of discretion, and we're requesting a new trial. Thank you. We will be taking the matter under advisement and rendering the decision without undue delay. And for now, we're going to take a very brief recess.